UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROXANNE TUNISON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SAFECO INSURANCE COMPANY OF ILLINOIS, <br><br> Defendant. | CASE NO. C19-0503RSL <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on defendant Safeco Insurance Company of Illinois' "Motion for Summary Judgment." Dkt. # 15. Plaintiffs sued their insurer in King County Superior Court alleging claims of breach of contract, Washington Consumer Protection Act ("CPA") violations, bad faith, negligence, Insurance Fair Conduct Act ("IFCA") violations, estoppel, and declaratory and/or injunctive relief. Dkt. # 1-2. Safeco seeks summary judgment on all of the claims based primarily on the arguments that plaintiffs refused to provide information necessary to the valuation of their claim and that Safeco acted in good faith when investigating and adjusting the claim. Plaintiffs filed a cross-motion for summary judgment (Dkt. # 20), but subsequently withdrew it (Dkt. # 23).

Summary judgment is appropriate when, viewing the facts in the light most favorable to

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 1

the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

I.   **EVIDENTIARY ISSUES**

Plaintiffs' submission grossly exceeds the page limits authorized by LCR 7(e)(3). Not only is their response memorandum slightly over the twenty-four page limit, excluding the

caption and signature block, but the memorandum relies entirely on the "Statement of Facts" contained in the Declaration of Brian P. Russell. *See* Dkt. # 20 at 2. Mr. Russell's declaration is another nine pages. In addition to being subject to exclusion for violating the applicable page limits (*see* LCR 7(e)(6)), Mr. Russell's statements regarding the automobile accident in which Roxanne Tunison and her son, Elias Tunison, were injured, their pre-accident health, employment, and aspirations, and their post-accident medical history are not based on his personal knowledge and are inadmissible hearsay. The Court has not considered most of paragraphs 3-8 of the declaration, but it has considered the exhibits attached thereto[1] and Mr. Russell's introduction of those exhibits.

Plaintiffs' objections to the Declaration of John M. Silk and the Declaration of Lyoan Mey are overruled. Mr. Silk, as counsel for defendant, has personal knowledge of correspondence and discovery exchanged by the parties, as well as actions taken by Safeco during the course of this litigation. Ms. Mey, a senior claims resolution specialist for Safeco, is familiar with Safeco's claims handling procedures and can testify regarding the documents and notations contained in the Tunisons' file. To the extent Ms. Mey strays from what the claims file reveals, such as when she states that "[t]he Tunisons did not send a UIM demand until December 3, 2018" (Dkt. # 17 at ¶ 12), the Court interprets the statement as a representation that there is no indication of a demand in the claims file prior to December 3, 2018, and that Safeco's adjusting procedures would require a notation regarding receipt of a demand.

## II.  BACKGROUND

Plaintiff Jon Tunison had an underinsured motorist ("UIM") policy with Safeco covering

---

[1] For purposes of this motion, the Court has considered the "Disclosure and Report of Mary E. Owen, Esq." (Dkt. # 21-1 at 27-47) and the Declaration of M.J. Dena (Dkt. # 22).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 3

his wife, Roxanne Tunison, and, apparently, their son, Elias Tunison.[2] Dkt. # 17-1 at 9. On September 23, 2016, while the Safeco policy was in force, Roxanne and Elias were rear-ended and injured by Natalie Tews. Dkt. # 17-1 at 2-5. Roxanne and Elias sought compensation from Ms. Tews and her insurer, settling in July 2018 for the policy limits. Roxanne and Elias each received $47,986.50. Dkt. # 21 at ¶ 10.

Plaintiffs assert that they incurred damages exceeding this recovery. Through counsel, Roxanne and Elias made a formal UIM demand to Safeco on December 3, 2018. Dkt # 19 at 45-56.[3] Their UIM demand detailed the extent of Roxanne's and Elias' injuries, medical treatments, anticipated treatments, and damages to date. According to the demand letter, Roxanne had incurred $16,255.14 in medical expenses and $46,430 in lost wages, and Elias had incurred $15,127.17 in medical expenses and $27,400 in lost wages. Dkt. # 17-1 at 49-55. The demand indicated that Roxanne and Elias expected total damages to exceed their policy limits and requested that Safeco pay them $100,000[4] each. *Id*. at 55. Attached to the demand were copies of

---

[2] The policy lists as "rated drivers" Jon Tunison, Roxanne Tunison, and Josiah Tunison. Dkt. # 17-1 at 8-9. For clarity, the Court will refer to members of the Tunison family by their first names.

[3] Prior to this date, Safeco was aware that Roxanne and Elias were pursuing a claim against Ms. Tews and that a UIM demand to Safeco was possible. Safeco did not know the amount of the demand until December 2018. In the interim, however, it became clear that the parties had a disagreement regarding whether Washington or Montana law applied (which would have an impact on the UIM policy limits). Safeco sought information from plaintiffs to make this preliminary UIM determination even before a demand was made. *See* Dkt. # 21-1 at 13.

[4] As mentioned in footnote 3, there was a dispute regarding the applicable coverage limits. Safeco had issued to the Tunisons a "Montana Essential Personal Auto Policy" for the period February 7, 2016, to February 7, 2017. Dkt. # 17-1 at 8-11. The policy provided bodily injury liability coverage up to $100,000/person and $300,000/occurrence and UIM coverage of $50,000/person and $100,000/occurrence. Dkt. # 21-1 at 4. When the Tunisons submitted a request to change their mailing address to Seattle, Washington, Safeco issued a notice that the policy would be cancelled as of May 23, 2016. Dkt. # 16-1 at 9. The Tunisons then clarified that Jon was working in Washington temporarily, but wanted the bills sent to Washington: the rest of his family and the insured vehicles were still in Montana. The cancellation was revoked, and Safeco amended the policy in June 2016 to reflect the address change. *Id*. at 9-10.

In October 2017, plaintiffs informed Safeco that Roxanne and Elias had been residing in Washington at the time of the collision and requested confirmation that, as proscribed by Washington law, they were entitled to UIM coverage with the same limits as the liability coverage. *Id*. at 4-5. *See*

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

Roxanne and Elias' medical bills and spreadsheets detailing their medical expenses. *Id*. Safeco responded the next day, noting a discrepancy in the records regarding plaintiffs' state of residence and that the demand letter was supported by medical bills rather than medical records. *Id*. at 64. When Safeco inquired whether it should expect the supporting records by mail or email, plaintiffs' counsel indicated that he did not have all the records and that his clients would sign releases so that Safeco could obtain the documents itself. *Id*. On December 5, 2018, plaintiffs sent Safeco links to emaillargefile.com files where unspecified records and medical expense documentation were apparently stored for access. Dkt. # 17-1 at 70; Dkt. # 22 at 1-2. Safeco, however, was unable to open the links, which it told plaintiffs when requesting that the records be emailed instead. Safeco specifically requested wage loss documentation and the medical records underlying the bills that had been provided with the demand letter. If plaintiffs did not have the requested records, Safeco asked that they sign medical and wage release forms (which Safeco provided). Dkt. # 17-1 at 72-81. From December 5th to January 10th, plaintiffs sent a number of emails to Safeco transmitting various medical records and Roxanne's 2017 W-2. Dkt. # 17-1 at 66-67; Dkt. # 22 at 1-5. Plaintiffs declined to sign releases or to provide any other wage information (Dkt. # 17-1 at 67),[5] but agreed to a brief extension of the deadline by which Safeco had to make its coverage determination in light of their continuing production of supporting documentation (Dkt. # 17-1 at 66).

On January 11, 2019, the agreed upon date for the coverage determination, Safeco confirmed that it had received and reviewed all of the records provided, but noted specific

---

RCW 48.22.030. Safeco declined to confirm plaintiffs' understanding of the coverage limits, instead noting that plaintiffs had a Montana policy and that it would need to investigate further to determine residency as of 2016. Dkt. # 21-1 at 9 and 13. Safeco requested an opportunity to take recorded statements from Jon, Roxanne, and Elias on the matter. *Id*. at 13. Jon, Roxanne, and Elias all confirmed that they had been living primarily in Washington since at least May 2016 and that three of the four insured vehicles were garaged in Seattle. *Id*. at 10.

[5] Plaintiffs' assertion that they "never refused Safeco from obtaining any of their medical reports or records" (Dkt. # 20 at 13) is not supported by the record.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 5

deficiencies. Dkt. # 17-1 at 94-99. With regards to Elias, Safeco had no wage records at all, and the medical records suggested that his neck and back issues resolved within months of the accident. The adjuster noted causation concerns regarding medical records related to Elias' right wrist injury: the records suggested that Elias sought treatment for right hand pain caused by either golfing or a laceration/infection he suffered prior to the accident at issue. Dkt. # 16-1 at 4; Dkt. # 17-1 at 97. Safeco requested records related to the laceration event and other records regarding his wrist. With regards to Roxanne, Safeco acknowledge receipt of the majority of her medical records, but noted that she had been released from care with minimal residual neck pain. Her wage loss claim could not be appropriately valued based solely on a W-2 from the year following the accident. Safeco concluded that, given the records provided, both Roxanne and Elias had been fully compensated by the at-fault driver's insurance, and UIM benefits were not available. Safeco made very clear, however, that it was making a coverage determination on an incomplete record because of the time limits imposed by statute and that it was willing to reconsider the denial if additional documentation – specified in detail in the determination letter – were provided. Safeco promised a formal response to the outstanding issue regarding the applicable policy limits "soon." Dkt. # 17-1 at 99.

Plaintiffs chose not to supplement their production, instead responding to the coverage denial letter with a demand for arbitration and a formal notice that Safeco had violated IFCA. Dkt. # 17-1 at 59-62. Plaintiffs alleged that Safeco engaged in unfair claim settlement practices in violation of WAC 284-30-330(2), (4)-(8), (13), and (15), WAC 284-30-360, WAC 284-30-370, and WAC 284-30-380, and that its denial of the full $100,000 in coverage/benefits was unreasonable. *Id*. at 60-62. In its February 2019 response, Safeco summarized the available medical records, detailed the communications between the insurer and the insureds, denied that it had acted unreasonably or compelled the insureds to litigate/arbitrate to obtain the policy benefits, reserved its contractual right to decline arbitration, and agreed to reform the UIM policy limits to meet Washington's standards. Dkt. # 16-1 at 2-11. Plaintiffs assert that they did not

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 6

receive Safeco's response to the IFCA notice "until well after this lawsuit was filed" (Dkt. # 20 at 23), and, indeed, it appears that the IFCA correspondence was sent to the wrong email address (compare Dkt. # 17-1 at 30, 33, and 87 (emails from October 2017, January 2018, and January 2019 using the address bprattorney@msn.com) with Dkt. # 26-1 at 2 (IFCA correspondence sent to bprlaw@comcast.net). Plaintiffs apparently received Safeco's response (including notice that the policy limits had been adjusted upwards) in April 2019, more than a month after this lawsuit was filed. Dkt. # 21-1 at 21.

Jon Tunison, along with his wife Roxanne and son Elias, filed this lawsuit against Safeco in King County Superior Court on March 11, 2019. Dkt. # 1-2. Safeco removed the matter to federal court on April 5, 2019. Dkt. # 1. On October 3, 2019, plaintiffs provided updated billing and medical records for Roxanne covering the period October 2018 (months before the demand letter was sent) through September 2019. Dkt. # 17-1 at 185. The records indicate a diagnosis of cervical spondylosis and cervical compression fracture with symptoms of neck pain, stiffness, and bilateral arm pain. *Id.* at 190. Roxanne underwent spinal surgery in September 2019. *Id.* at 195-96. After receiving this additional information, Safeco paid Roxanne the reformed UIM coverage limit of $100,000. Dkt. # 16-1 at 47.

Safeco seeks summary judgment on the grounds that Roxanne and Elias failed to provide adequate documentation to support their UIM claim prior to filing this lawsuit despite Safeco's repeated attempts to gather the necessary documentation, and that when Roxanne did provide sufficient documentation, Safeco paid her claim. Plaintiffs argue that there are triable issues of fact regarding Safeco's bad faith and breach of contract given that it (a) failed to conduct a reasonable investigation, instead foisting the responsibility for adjusting the claim onto its insureds, (b) unreasonably low-balled the valuation of plaintiffs' claims and refused to confirm the $100,000/person coverage limits, forcing the insureds to resort to litigation to obtain the policy benefits, (c) refused to participate in arbitration, and (d) ultimately paid Roxanne the policy limits after offering her zero only ten months earlier.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 7

## III. DISCUSSION

### A. Breach of Contract

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

*Panorama Village Condominium v. Allstate Ins. Co.*, 144 Wn.2d 130, 137 (2001) (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665-66 (2000)) (internal quotation marks omitted).

In this case, Safeco promised to "pay damages which an Insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury: 1. Sustained by that Insured; and 2. Caused by an accident." Dkt. # 17-1 at 12. The UIM coverage does not duplicate any amounts paid by or on behalf of the at-fault driver (*Id.* at 15) and was capped at $50,000/person. Safeco's obligation to pay Roxanne and/or Elias for losses in excess of the $47,986.50 they recovered from Ms. Tews was contingent on their cooperation in the investigation of the claim, their willingness to undergo physical examination and examination under oath if requested, and their authorization for Safeco to obtain medical reports and other pertinent records. *Id.* at 17.

Plaintiffs argue that Safeco breached the insuring agreement in two ways, first by failing to reform the contract and confirm that the Washington-mandated policy limit of $100,000/person applied and then by failing to pay the benefits owed. The policy limit disagreement did not cause plaintiffs damage. As discussed below, there was no duty to pay any benefits at all until months after Safeco had agreed to reform the contract and plaintiffs were aware that Safeco would provide $100,000/person in UIM coverage if appropriate proofs of loss

were provided. Thus, any dispute regarding the upper limits of coverage was merely theoretical at the time this lawsuit was filed and was fully resolved by the time Roxanne's losses triggered the UIM coverage.

With regards to the payment of benefits, plaintiffs made a demand for the policy limits based on their assertions that Roxanne had incurred $16,255.14 in medical expenses and $46,430 in lost wages and that Elias had incurred $15,127.17 in medical expenses and $27,400 in lost wages. Despite repeated requests, the only wage record plaintiffs supplied in support of their lost wage claims was Roxanne's 2017 W-2. Safeco noted that income in the year following the accident could not establish a loss or diminution. Roxanne's medical records, however, showed that she missed work from September 23, 2016, through December 8, 2016. Based on the wage information submitted with plaintiffs' demand letter, that would result in an approximate loss of income of $6,165. Plaintiffs declined to authorize the release of their wage records, leaving Safeco with no evidence of any other diminution in earnings following, much less because of, the accident.

Over the course of the five-and-a-half weeks following receipt for plaintiffs' demand letter, Safeco repeatedly sought copies of the underlying medical records. Communication was fairly constant over that time, ultimately resulting in the production of medical records supporting the claimed medical expenses. With regards to Roxanne, the records related to the emergency room visit immediately following the accident, Roxanne's acupuncture, chiropractic, physical therapy, and massage appointments for approximately seven months, and additional massage and doctor visits after a gap in treatment. With regards to Elias, the records related to the emergency room visit immediately following the accident and a laceration incident occurring just prior to the accident, with subsequent infection and pain. The records also indicated that Elias had undergone imaging, acupuncture, injections, occupational/physical therapy, and orthopedic evaluations, but the actual records of those treatments were not provided. Plaintiffs declined to sign a medical records release and insisted that Safeco make its coverage

determination by January 11, 2019. Safeco complied, but indicated that its determination was subject to review and re-evaluation, listing specific medical records it would like to review. Plaintiffs neither produced additional records nor signed the requested waivers. Instead, they demanded arbitration and issued an IFCA notice letter a week later, accusing Safeco of bad faith. Safeco responded, again requesting additional medical and wage records or signed releases and indicating that it would re-evaluate its coverage determination upon receipt of additional information.

Plaintiffs have not provided evidence from which a reasonable jury could find that Safeco had breached the insuring agreement. As of January 11, 2019, Safeco could confirm only $22,420 in damages for Roxanne and $15,127 in damages for Elias. Even if Safeco were willing to assume that all of these expenses were causally connected to the accident – which it stated was not the case for Elias – each plaintiff had already been fully compensated for these losses by the at-fault driver. Plaintiffs have not shown that Safeco's valuation of the claim in January 2019 was deficient in any way. Even if plaintiffs had, in fact, incurred additional wage loss or medical expenses prior to January 2019 that were causally related to the accident, they did not provide evidence of those expenses and affirmatively refused to comply with the policy requirement that they authorize Safeco to obtain pertinent medical and wage records. Having failed to comply with their own obligations under the contract, plaintiffs cannot succeed on their claim that Safeco breached its promise to pay benefits. *See DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 220 (2014); *Pilgrim v. State Farm Fire & Cas.*, 89 Wn. App. 712, 720-25 (1997).

Plaintiffs also argue that Safeco breached its obligation to pay Roxanne the policy limits because it did so only after forcing its insureds to initiate litigation. This argument is untenable given the underlying facts. Roxanne disclosed additional medical treatment and underwent surgery following the filing of this lawsuit. Upon review of the post-filing medical records and expenses, Safeco determined that Roxanne had not been fully compensated by the at-fault driver

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

and paid the policy limits. The additional treatment not only increased the insured's out-of-pocket expenses, but also showed that her physical injuries were more severe than shoulder discomfort requiring a massage every few months. The fact that Safeco made payments under the policy once Roxanne incurred and provided documentation of uninsured expenses is not evidence of a breach of the insuring agreement.

B.   CPA

The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. To prevail on a private CPA claim, plaintiffs must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784 (1986). A violation of any subsection of the Washington Administrative Code 284-30-330 is a *per se* unfair or deceptive act under the CPA. *James E. Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co.,* 118 Wn. App. 12, 20-21 (2003). An insurer's breach of its duty of good faith also constitutes a *per se* violation of the CPA. *See Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash.*, 162 Wn. App. 495, 511 (2011).

Plaintiffs argue that Safeco violated WAC 284-30-330(2), (4), (6), (7), and (13), WAC 284-30-360, WAC 284-30-370, and WAC 284-30-380. Dkt. # 20 at 9.[6] Subsection (2) of WAC 284-30-330 makes it an unfair method of competition or an unfair/deceptive act in the business of insurance to fail "to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." Plaintiffs generally assert that "Safeco refused to answer multiple letters on the proper coverage" or "completely failed to communicate" regarding coverage limits, but do not identify any unanswered communication to which a response was expected or required under the regulations. Dkt. # 20 at 9 and 23.

---

[6] The response memorandum identified WAC 284-30-330(12) as one of the at-issue regulations, but the only argument asserted is as to subsection (13), not subsection (12).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 11

Subsection (4) prohibits a refusal to pay claims in the absence of a reasonable investigation. Safeco made a number of attempts to investigate plaintiffs' claims of loss, but plaintiffs did not provide documentation of uncompensated loss and refused to sign releases so that Safeco could obtain the medical and wage records itself. Plaintiffs do not state what was unreasonable about Safeco's efforts, but argue that "an over two-year delay in payment to Roxanne of the undisputed policy limits" was the result of Safeco's unreasonable investigation and evaluation. Dkt. # 20 at 9-10. As discussed above, however, plaintiffs did not reveal that Roxanne had returned for treatment and incurred uncompensated expenses until October 3, 2019. Those expenses were paid a month later. Plaintiffs' assertion of a two-year delay in benefits due is unsupported. Nor have they shown what Safeco should have done in the absence of a signed release to discover Roxanne's subsequent treatment and surgery prior to the point at which they were disclosed by plaintiffs.

     WAC 284-30-330(6) makes it an unfair practice in the business of insurance to fail to make a good faith effort "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Again, plaintiffs rely on the fact that Safeco waited until November 2019 to pay Roxanne the policy limits, but liability for those amounts was not reasonably clear until they were disclosed in October 2019. Subsection (7) prohibits insurers from "[c]ompelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." At the time plaintiffs demanded arbitration and filed this litigation, their UIM claims were reasonably valued at zero because they had failed to provide (or to allow Safeco to obtain) documentation supporting a loss in excess of that which had already been paid by the at-fault driver. In addition, Safeco's coverage determination letter requested plaintiffs' assistance in obtaining documentation to support plaintiffs' wage loss claims and to evaluate whether Elias' wrist pain was causally related to the accident. It expressly stated that it was willing to review and re-evaluate its determination if the

missing documents supported a claim in excess of the underlying settlement amounts. Plaintiffs declined to cooperate in the investigation and chose to pursue litigation at that point. In these circumstances, to say that plaintiffs were "compelled" to file a lawsuit or pursue arbitration would be inaccurate.[7]

WAC 284-30-330(13) requires insurers to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Safeco clearly stated that the available records and documentation supported a value of plaintiffs' claims that fell below that which they had already recovered from the underinsured motorist. It is unclear what plaintiffs found confusing about this explanation: in their memorandum, they simply assert that Safeco violated subsection (13) "by failing to provide a reasonable explanation for the denial of the Tunisons' claim . . . ." Dkt. # 20 at 10.

Plaintiffs assert that Safeco violated WAC 284-30-360 by taking "years to pay the proper UIM coverage." Dkt. # 20 at 11. That regulation imposes deadlines by which an insurer must respond to communications by its insureds. Plaintiff has not identified any communication that went unanswered. Plaintiffs' assertion that Safeco violated WAC 284-30-370, which requires that an insurer complete its investigation of a claim within thirty days, cannot succeed on the undisputed facts of this case. Safeco repeatedly attempted to obtain the records necessary to make a coverage determination, requested an extension of the regulatory deadline given the difficulties it was having in obtaining the documentation, and was granted an extension until January 11, 2019. It made its determination on that date.

WAC 284-30-380 requires an insurer to accept or deny a claim for insurance within 15 days of receipt of proof of loss. Plaintiffs do not state when they believe they provided proof of a

---

[7] To the extent plaintiffs rely on the fact that Safeco ultimately paid $100,000, the policy limits under Washington law, to Roxanne, that fact cannot show malfeasance on Safeco's part in the spring of 2019 when plaintiffs withheld the information that justified the payment until October of that year.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 13

loss that triggered the UIM coverage, but the undisputed facts show that they were still providing documentation in support of their claim just before the agreed deadline for the coverage determination. To the extent plaintiffs are complaining about the length of time it took Safeco to determine the limits of the UIM coverage, plaintiffs offer no case law or other authority equating a "claim" with "policy limits."

Plaintiffs have not established that Safeco violated one or more of the WAC provisions on which they rely in opposing Safeco's motion for summary judgment. Even if they had, they have not shown that the violation caused injury recoverable under the CPA. Any slight delay in a communication or determination did not change the fact that, as of January 2019, Safeco reasonably concluded that plaintiffs' UIM claim had no value. Any dispute regarding the upper limits of the policy did not come into play until plaintiffs finally provided documentation to trigger coverage – in October 2019. Plaintiffs' CPA claim fails as a matter of law.

C.   IFCA

IFCA provides that a first-party claimant to an insurance policy "who is unreasonably denied a claim for coverage or payment of benefits by an insurer" may bring an action for damages. RCW 48.30.015(1). However, "IFCA does not create an independent cause of action for regulatory violations" absent an underlying unreasonable denial of coverage or benefits. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684 (2017). In *Perez-Crisantos*, the Washington Supreme Court considered whether an insured can sue his insurance company under IFCA for Washington regulatory violations. The court held that a violation of the WAC does not give rise to a private cause of action under IFCA against the insurer, reiterating the language of RCW 48.30.015(1) which requires evidence of an unreasonable denial of coverage or an unreasonable denial of payment of benefits, rather than a violation of the WAC. *Id*. at 680-83.

Plaintiffs offer no evidence in support of their assertion that Safeco's investigation was unreasonable or that it ignored evidence when valuing the claimed losses. As discussed above,

1  plaintiffs asserted that Roxanne's losses resulting from the accident exceeded $60,000 and that
2  Elias' losses exceeded $40,000, but they substantiated only a fraction of those losses prior to
3  filing this lawsuit. Safeco requested plaintiffs' medical and employment records or, in the
4  alternative, that plaintiffs sign releases so that Safeco could obtain the records directly. The
5  insurer pointed out with specificity the lack of evidence necessary to establish plaintiffs' claims,
6  but to no avail. In the circumstances presented here, neither the fact that the parties disagreed in
7  their valuation of plaintiffs' claims nor the fact that Safeco ultimately paid Roxanne the policy
8  limits when plaintiffs provided additional records showing uninsured expenses raises an
9  inference that Safeco's investigation was unreasonable or that it ignored evidence when adjusting
10 the claim. A mere "disagreement about the amount of damages based on available evidence
11 cannot ground a claim for failure to investigate." *Bridgham-Morrison v. Nat'l Gen. Assurance
12 Co.*, 739 F. App'x 381, 384 (9th Cir. 2018) (citing *Anderson v. State Farm Mut. Ins. Co.*, 101
13 Wn. App. 323, 334 (2000)).

### D. Bad Faith

An insurer owes its insured a duty of good faith, the violation of which may give rise to an action in tort for bad faith. *See Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 764 (2002). To establish bad faith by an insurer, an insured "must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). "Whether an insurer acted in bad faith is a question of fact," which can be decided on summary judgment only if reasonable minds could not differ in finding the insurer's conduct unreasonable. *Id.* Although bad faith does not require proof of an intentional misrepresentation or fraud, *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173-74 (1970), it requires more than a simple mistake. If the insurer "acts honestly, bases its decision on adequate information, and does not overemphasize its own interest," a bad faith claim cannot succeed. *Werlinger v. Clarendon Nat. Ins. Co.*, 129 Wn. App. 804, 808 (2005).

For all of the reasons discussed above, the Court finds that Safeco acted reasonably as a

matter of law in investigating and valuing plaintiffs' claims. Although it turned out that Roxanne had residual pain that sent her back into treatment and ultimately resulted in surgery, Safeco diligently and reasonably attempted to obtain documentation regarding plaintiffs' injuries and losses prior to the determination deadline. When plaintiffs declined to provide releases so that Safeco could obtain the documentation on its own, it based its January 2019 decision on the information plaintiffs made available to it. In the determination letter, Safeco identified concerns it had regarding causation and the amount of damages at issue, specifying additional records it would need to support the UIM claim. Plaintiffs chose not to provide the requested documentation, instead filing this lawsuit. Plaintiffs have not raised an inference that Safeco's coverage determination was unreasonable, frivolous, or unfounded or that the insurer overemphasized its own interests in the circumstances presented here.

### E. Negligence

Plaintiffs have asserted a negligence claim against Safeco, but argue only that Safeco acted unreasonably and that negligence involves questions of fact that cannot be determined in the summary judgment context. For the reasons stated above, plaintiffs have failed to raise an genuine issue of fact regarding the reasonableness of Safeco's conduct in this case.

### F. Coverage by Estoppel

Plaintiffs allege that, as a result of Safeco's conduct in this action, the insurer should be estopped from denying coverage. Dkt. # 1-2 at ¶ 8.1. Plaintiffs have not, however, identified any wrongful conduct which could trigger coverage by estoppel in this case. *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn 2d 383, 393 (1992) (noting that "estoppel is the appropriate remedy for an insurer's bad faith conduct" and collecting cases). In opposing Safeco's motion for summary judgment on this claim, plaintiffs point out that it "is unclear whether Safeco agrees with PIP coverage of $10,000 each," as mandated by Washington law. Dkt. # 20 at 6. There are no

allegations in the complaint regarding the personal injury protection policy limits,[8] and plaintiffs have not raised an inference of bad faith related to the PIP coverage determination or payments made thereunder. Plaintiffs may not inject a new claim at this stage of the litigation.

### G. Declaratory and Injunctive Relief

In their complaint, plaintiffs request declarations that Safeco may not offset what it owes under the UIM coverage by its PIP payments, that plaintiffs do not owe Safeco subrogation or reimbursement of the PIP payments, and that if plaintiffs do owe subrogation/reimbursement, the amount owed should be reduced by a pro rata share of the attorney's fees and costs plaintiffs have incurred in this litigation. Safeco argues that these claims are contradictory and not the subject of a justiciable controversy because the underlying facts regarding the value of plaintiffs' UIM claim and whether they have been fully compensated have yet to be determined.

> A justiciable controversy is "(1) ... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive." [*Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n*, 141 Wn.2d 245, 284 (2000)] (alteration in original) (internal quotation marks omitted) (quoting *Wash. State Coal. for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 917 (1997)). Each of these four elements must be met, otherwise the court "steps into the prohibited area of advisory opinions." *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815 (1973).

*Lewis Cty. v. State*, 178 Wash. App. 431, 436-37 (2013). Plaintiffs' only response to Safeco's ripeness argument is an assertion that the reimbursement issue "will need to be addressed at trial in order to determine the total damages and payout to the Tunisons." Dkt. # 20 at 6. Plaintiffs have not raised a triable issue of material fact as to any of the

---

[8] Nor did plaintiffs raise this issue in their IFCA notice letter. Dkt. # 17-1 at 60-62.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 17

substantive claims asserted in this litigation, however, and even if offsets or reimbursements could eventually become an issue once Elias' claims are finally resolved, it is not currently a justiciable controversy.

### H. Jon Tunison

Plaintiffs have not identified any basis for the claims asserted by Jon Tunison, who was not injured in the accident at issue and has no claim to coverage under the policy.

## IV. CONCLUSION

For the foregoing reasons, Safeco's motion for summary judgment (Dkt. # 15) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Safeco and against plaintiffs.

Dated this 27th day of October, 2020.

*[signature]*
Robert S. Lasnik
United States District Judge